Ben B. Bodne v. Commissioner.
Bodne v. Commissioner
Docket No. 30508.
United States Tax Court
1952 Tax Ct. Memo LEXIS 225; 11 T.C.M. (CCH) 451; T.C.M. (RIA) 52136; May 12, 1952
Ernest F. Hollings, Esq., for the petitioner. S. Earl Heilman, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion RAUM, Judge: The Commissioner determined a deficiency in income tax in the amount of $7,789.78 against petitioner for the fiscal year ended June 30, 1945. The only question is whether petitioner is entitled to a deduction in the amount of $15,459.25, representing part of a payment made by him to the United States in connection with a controversy involving petitioner's sales made at allegedly over-ceiling prices. [The Facts] Petitioner now resides in New York, *226 New York. His income tax return for the fiscal year ended June 30, 1945, was filed with the collector of internal revenue at Columbia, South Carolina. During the period in controversy, petitioner was in the petroleum business at Charleston, South Carolina, doing business as the Bodne Oil Company. He was a "terminal operator", and sold gasoline and other petroleum products to distributors; he also made substantial sales to the United States. His sales were subject to O.P.A. regulations, MPR 88, as amended. A controversy arose as to whether petitioner's sales of premium gasoline were governed by Section 5.3 of these regulations, as contended by petitioner, and under which petitioner determined his prices, or whether they were governed by Section 8.3 of the same regulations, a catch-all provision, as contended by representatives of O.P.A. Pursuant to Section 5.3, maximum price was determined, under specified conditions, by reference to the maximum price at the particular delivery point of a seller of the same class to a purchaser of the same class. Petitioner, relying upon Section 5.3, had fixed his prices by reference to prices charged by Standard Oil Company of New Jersey, and if *227 Section 5.3 were applicable, there was no controversy as to the correctness of these prices. A check of petitioner's business made by O.P.A. agents in the fall of 1944 for a period beginning July 1, 1944, disclosed overcharges in the amount of $15,459.25, if Section 8.3 were applicable. Conferences were thereafter held between representatives of petitioner and O.P.A. looking towards the settlement of the controversy. Towards the end of February 1945, a settlement was reached. By letter dated February 19, petitioner transmitted $25,000 to the United States, representing not only the $15,459.25 overcharges to the date that petitioner's business was checked, but also estimated overcharges that were made thereafter, during the period of negotiations which lasted for several months. Also, as part of the settlement, there were filed simultaneously on February 26, 1945 in the District Court of the United States for the Eastern District of South Carolina a complaint in the name of the administrator of O.P.A. against petitioner seeking injunctive relief and an answer by petitioner; and on the same day an order was entered by the District Court, in accordance with the understanding of the *228 parties, enjoining petitioner from making sales at prices other than pursuant to Section 8.3 of MPR 88. [Opinion] On petitioner's books, $15,459.25 was charged against sales, and the remaining $9,540.75 was reflected in petitioner's investment account. The sole issue now before us is whether petitioner is entitled, under Section 23 (a) of the Internal Revenue Code, to deduct $15,459.25 as an ordinary and necessary business expense. Although the evidence is not as clear as one might wish, we are satisfied, on the record as a whole, that the overcharges here involved were innocent rather than willful, and we so find as a fact. The payment, to the extent here involved, was an ordinary and necessary business expense, and the claimed deduction must be allowed. Jerry Rossman Corporation v. Commissioner, 175 Fed. (2d) 711 (C.A. 2); Pacific Mills, 17 T.C. 705. Decision will be entered for the petitioner.